IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES RUIZ CORIZ,

        Plaintiff,

v.                                                        No.  1:18-cv-00553-KRS

ANDREW SAUL,
Commissioner of the
Social Security Administration,

        Defendant.

## OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION TO REVERSE AND REMAND

Plaintiff seeks review of the Commissioner's determination that he is not entitled to Social Security disability benefits. With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b), the Court reverses and remands for further proceedings.

### I.  PROCEDURAL BACKGROUND

In February 2010, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that he had been disabled since February 10, 2009, due to pemphigus vulgaris.[1]  (AR 420).  Following a hearing held on March 1, 2012, administrative law judge ("ALJ") Ben Willner assessed Plaintiff with the severe impairments of pemphigus vulgaris and poly-arthralgias affecting the shoulder, knee, elbow, hand, and back.  (AR 137).  ALJ Willner then determined that Plaintiff had the residual functional capacity ("RFC") to perform the full range of medium work and thus was not disabled.  (AR 138).  Plaintiff successfully

---

[1] As explained by Plaintiff, pemphigus vulgaris "is an autoimmune disorder in which the body damages skin and mucous membrane cells."  (Doc. 22, p. 8).

petitioned the Appeals Council for review and the case was remanded for further development. (AR 147-49).

In 2014, per the order of remand, Plaintiff received a hearing before ALJ Michelle Lindsay. ALJ Lindsay found that Plaintiff had the severe impairments of chondromalacia of the left knee; mild arthritis of the hands; history of carpal tunnel syndrome; left ulnar neuropathy, status post ulnar nerve release and transposition; early arthritis of the left elbow; pemphigus vulgaris; depression; and anxiety. (AR 157). Ultimately, though, she issued an unfavorable decision, concluding that Plaintiff retained the RFC to perform a limited range of light work. (AR 169). Plaintiff appealed this decision, too, and the Appeals Council granted review. (176-183).

On May 12, 2016, the Appeals Council issued a partially favorable decision, wherein it determined that Plaintiff was under a disability as of December 9, 2014. Somewhat confusingly, the Council then explained that it adopted the ALJ's conclusion that Plaintiff was not disabled prior to December 9, 2014, (AR 180, 182), but it then remanded the case for further consideration of Plaintiff's RFC from February 10, 2009 through December 9, 2014. (AR 188). Here, the Council directed the ALJ to further evaluate "treating physician"[2] Dr. Robert Krueger's opinion, provide specific evidence to support Plaintiff's assessed limitations, and obtain supplemental evidence from a vocational expert ("VE") to "clarify the effect of the assessed limitations on the claimant's occupational base." (AR 189).

Although not a model of clarity, it appears that the Appeals Council was concerned that Dr. Krueger's opinion might have an effect on the ALJ's mental RFC findings pre-December 9, 2014. Accordingly, on March 20, 2017, Plaintiff received a supplemental hearing before ALJ

---

[2] The Appeals Council mislabeled Dr. Krueger as a "treating physician" when, in actuality, the doctor met with Plaintiff one time to conduct a consultative examination. *See* 20 C.F.R. § 404.1527 (a)(2). *See also* (Doc. 22, p. 3).

Lindsay. The ALJ was clearly frustrated with the order of remand, stating that the Appeals Council "just made a stinking mess out of [the case]." (AR 49). She went on to note that the Council "thoroughly screwed it up," (AR 50), that she would be "making the same findings, it's not going to change anything," (AR 49), and directed Plaintiff's attorney to "get [Plaintiff's] age, education, blah-blah, on the record." (AR 54).

Following these unique opening remarks, Plaintiff testified as to his mental state between February 2009 and December 2014. He attested that he suffered from depression, anxiety, loss of interest, fatigue, and sleep disturbances; that he had difficulties with concentration and public interaction; and that he stopped taking mental health medications because of the side effects. (AR 58-66). Plaintiff further explained that depression, anxiety, and fatigue were also side effects of his autoimmune medication, and that the anxiety and fatigue negatively impacted his ability to drive and do housework. (*Id.*).

On August 14, 2017, ALJ Lindsay determined, once again, that Plaintiff was not disabled prior to December 9, 2014. (AR 35). In making her decision, the ALJ employed the required five-step disability analysis,[3] first finding that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of February 10, 2009.[4] (AR 24). At step two, she assessed Plaintiff with the same severe impairments that she listed in her 2014 decision, but included the additional severe impairment of borderline intellectual functioning. (AR 25). At step three, the ALJ determined that none of Plaintiff's impairments, whether alone or in combination, met or medically equaled the severity of a listed impairment. (*Id.*).

---

[3] *See* 20 C.F.R. § 404.1520 (outlining the five-step analysis).
[4] The ALJ also determined that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2013. (AR 24).

ALJ Lindsay next considered Plaintiff's RFC and, true to her word, made findings identical to those she reached in 2014. *See* AR 159.

> I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that he can lift, carry, push, and pull 20 pounds occasionally, and ten pounds frequently. He can sit for six of eight hours, and stand and/or walk for six of eight hours. He is further limited in that he can occasionally kneel and crawl, but can never climb ladders, ropes, or scaffolds. He can occasionally handle and finger, and he must avoid unprotected heights. In addition, he is limited to understanding, remembering, and carrying out simple instructions, and is able to maintain attention and concentration to perform only simple tasks for two hours at a time without requiring redirection to task. He can have only occasional contact with the general public. Finally, he requires work involving no more than occasional change in a routine work setting.

(AR 27).

ALJ Lindsay then proceeded to steps four and five where, in reliance on VE testimony offered at Plaintiff's 2014 hearing, she determined that Plaintiff did not have any past relevant work but that he was capable of performing the requirements of representative occupations such as cotton classer aide, blending tank tender helper, and scaling machine operator. (AR 34-35). Accordingly, the ALJ issued an unfavorable decision and, subsequently, the Appeals Council denied Plaintiff's third request for review. (AR 1, 35). Now that the Commissioner's decision is final, *see Sims v. Apfel*, 530 U.S. 103, 106–07 (2000), Plaintiff's request for review is properly before the Court. 42 U.S.C. § 405(g).

## II. STANDARD

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). *See also* 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004)

(quotation omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). The Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* at 1262. "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted). Even so, it is not the function of the Court to review Plaintiff's claims de novo, and the Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

III. ANALYSIS

A. Plaintiff's Arguments

Plaintiff raises multiple challenges to the Commissioner's decision. Broadly speaking, Plaintiff argues that the ALJ (1) failed to consider his autoimmune disorder under the appropriate listing; (2) improperly evaluated the medical and opinion evidence of record; and (3) failed to elicit VE testimony during Plaintiff's most recent hearing. Having meticulously combed the record, the Court assigns error to the ALJ's consideration of opinion evidence offered by Plaintiff's consulting examiner, Robert Krueger, Ph.D., FICPP, counselor, Penny Davies, Ph.D., LPCC, and treating physician, Rajan K. Mirchandani, MD.

B. The ALJ's Opinion Evidence Evaluation

It is beyond dispute that an ALJ is required to consider and weigh every medical opinion contained in the record. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012); 20 C.F.R. § 404.1527(c). In determining what weight to give to an opinion, the ALJ evaluates

several factors including, inter alia, the supportability and consistency of the opinion. 20 C.F.R. § 404.1527(c)(1)-(6). The ALJ need not expressly consider all of the relevant factors, but his or her decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the…medical opinion and the reasons for that weight." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quotation omitted). ALJ Lindsay's evidence evaluation falls short of these mandates.

### 1. Dr. Robert Krueger

On February 17, 2012, Dr. Krueger conducted a psychological evaluation of Plaintiff "in order to obtain information about his current cognitive/emotional/behavioral functioning, to assist with diagnosis and to assist with [the] processing of his disability claim." (AR 731).

After conducting a battery of tests and assessments, Dr. Krueger diagnosed Plaintiff with major depressive disorder, adjustment disorder with anxiety, and borderline intellectual functioning. (AR 735). He then opined that Plaintiff would have marked impairment with complex or detailed instructions; maintaining pace and persistence in work environments; adjusting to changes in work environment; dealing with the general public; and traveling to distant places alone. (AR 736). Dr. Krueger further assessed Plaintiff with moderate impairment in terms of understanding, remembering, and following simple work instructions; dealing with supervisors and coworkers; and moderate "and at times marked" impairment with recognizing and appropriately responding to dangers in the work environment. (*Id.*). He also noted that Plaintiff "shows evidence of having long-term cognitive impairment" and that he is "marginally capable of managing his own financial benefits." (*Id.*).

ALJ Lindsay afforded "little weight" to Dr. Krueger's opinion, finding that the doctor was not a treating source but rather an examining source whose evaluation was made at the

request of Plaintiff's representative and for the purpose of processing Plaintiff's disability claim. (AR 31.) Because of this, ALJ Lindsay determined that Plaintiff "had every reason to present himself worse than he was at that time and thereafter." (*Id.*).

ALJ Lindsay also found that Dr. Krueger's evaluation was inconsistent with the evidence. Here, she pointed to Plaintiff's limited mental health treatment and a March 2013 report that Vistaril worked well to control Plaintiff's anxiety and depression. (*Id.*). ALJ Lindsay went on to state that Dr. Krueger's assessment of Plaintiff's intellectual functioning was "flawed" because Plaintiff continued to work on cars—skilled work requiring a "higher degree" of intellectual functioning—during the relevant timeframe. (AR 32).

The ALJ failed to articulate legitimate reasons for rejecting Dr. Krueger's findings. Although an examining physician's opinion may not be entitled to "the sort of deferential treatment accorded to a treating physician's opinion," *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003), the ALJ was still required to weigh Dr. Krueger's opinion in accordance with 20 C.F.R. § 404.1527(c)(1)-(6). And, the fact that the opinion was elicited at the request of Plaintiff's representative is not a valid reason to discredit the doctor's findings. *Cf. McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002) (holding that an alleged advocacy posture is not a proper basis for the rejection of a treating physician's opinion).

Further, the ALJ's suggestion that Plaintiff used his evaluation with Dr. Krueger as an opportunity to create false evidence is completely unsubstantiated. There is nothing, either in the record or cited by the ALJ, to indicate that Plaintiff was malingering at any point or that he acted dishonestly in the disability process. *See Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (explaining that conclusory statements with no link to the evidence or facts prevents meaningful review of the ALJ's decision).

The ALJ's remaining justifications for rejecting Dr. Krueger's opinion are also invalid. The ALJ places great emphasis on the limited mental health evidence found in the record. While the ALJ deems this as inconsistent with the doctor's findings, "[t]he absence of evidence is not evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993). *See also Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (unpublished) (explaining that "the lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations"). Moreover, the Court notes that while a plaintiff's efforts to seek treatment may be considered when assessing the plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms, *Thompson*, 987 F.2d at 490, this factor is not used to evaluate the validity of a medical source opinion. *See* 20 C.F.R. § 404.1527(c)(1)-(6).

The ALJ also makes several references to Plaintiff's "acknowledgment" that Vistaril worked well to control his anxiety and depression. (AR 31, 33). Yet, this statement was actually made by Plaintiff's wife, and it only appears once in the record. (AR 848). Additionally, when asked about his psychiatric medications at the 2017 hearing, Plaintiff stated that he used to take Zoloft and "something else" but that he stopped because of the side effects. (AR 66). The ALJ's decision omits discussion of this testimony. This was error. An ALJ may "not ignore evidence that does not support his decision," *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001), or pick and choose from the record. *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).

Finally, the Court is unable to follow the ALJ's reasoning in regard to Dr. Krueger's assessment of Plaintiff's intellectual functioning. The ALJ determined that the doctor's findings were "flawed" because Plaintiff was able to work on automobiles. This is problematic for two reasons.

First, the record shows that Plaintiff *attempted* to work three to five hours per week in 2009 and 2010. (AR 165). S*ee also* AR 64. Additionally, the ALJ determined that Plaintiff's attempts to work did not qualify as substantial gainful activity, (AR 24), and Plaintiff's earning records show that he last reported earnings in 2008. (AR 413). Without further elaboration from the ALJ on this point, the Court cannot conclude that Plaintiff's work history is relevant evidence which adequately supports the ALJ's findings. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

The second problem with the ALJ's determination is that she listed borderline intellectual functioning as one of Plaintiff's severe impairments. (AR 25). This impairment was not included in the two previous decisions and the only explanation for its inclusion in the 2017 decision is that the ALJ relied on Dr. Krueger's findings to determine (1) that objective medical evidence established the existence of the impairment, 20 C.F.R. § 404.1521; and (2) that the impairment significantly limits Plaintiff's ability to do basic work activities. 20 C.F.R. § 404.1520a(c); 20 C.F.R. § 404.1522. *See also* AR 23, 25. Accordingly, the Court is unable to determine why the ALJ both relied upon and rejected Dr. Krueger's findings as to Plaintiff's intellectual functioning. *See, e.g.*, *Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) (finding that an ALJ must explain his reasons for accepting one portion of a medical opinion while discrediting the remainder).

2. Dr. Penny Davies

From April 22, 2014 through June 19, 2014, Plaintiff and his wife attended seven[5] marriage counseling sessions with Dr. Davies. (AR 855-56). As the following examples

---

[5] Treatment notes from June 19, 2014 indicate that the couple wanted to increase their sessions to twice a week; however, there are no additional treatment notes after that date. (AR 856).

illustrate, treatment notes from four of these sessions reference Plaintiff's mental state and/or functional limitations.

April 22, 2014: "James seems to have problems w/ depression, anxiety, PTSD, as well as an auto-immune disease….can't really work….Limitations due to pemphigus vulgaris & emtl. issues also affect his functioning." (AR 855).

May 8, 2014: "[James' wife] helps James with the cars. James can only work 2-5 hrs per wk. Now his joints ache. He feels frustrated, depressed, anxious when trying to work. Not able to work." (*Id.*).

June 17, 2014: "Spent most of session going over symptoms that James experiences and how they impart his ability to wok. James very limited." (AR 856).

June 19, 2014: "James can't work on cars really & struggles trying. Also has problems focusing, remembering, cognitive issues also." (*Id.*).

On June 17, 2014, Dr. Davies completed a Mental Residual Functional Capacity Questionnaire, wherein she opined that Plaintiff suffers from depression, anxiety, PTSD, and substance abuse; that his pemphigus vulgaris complicates his symptoms; that his medications cause side effects including dizziness, drowsiness, fatigue, lethargy, and stomach upset; and that his prognosis was "poor." (AR 782).

Dr. Davies also noted that Plaintiff had no useful ability to function in terms of carrying out very short and simple instructions; maintaining attention for two hour segments; maintaining regular attendance and punctuality; working in coordination with others; completing a normal workday/workweek without interruptions from psychologically based symptoms; performing at a consistent pace; dealing with normal work stress; and recognizing and responding to hazards. (AR 784-85).

Dr. Davies further documented that Plaintiff could not meet competitive standards with regard to understanding and remembering both detailed and simple instructions; accepting instructions; and responding appropriately to criticism from supervisors. (*Id.*). She did not, however, believe that Plaintiff had a low IQ or reduced intellectual functioning. (AR 785).

ALJ Lindsay afforded little weight to Dr. Davies' findings, explaining that the doctor provided marriage counseling to Plaintiff and his wife, rather than individual treatment for significant mental health issues. (AR 33). She additionally noted that "there is nothing in the record to suggest a decrease in [Plaintiff's] ability to perform mental activities," and again cited to the singular report that Plaintiff's medication worked well to control his anxiety and depression. (*Id.*).

While there might be valid reasons to reject Dr. Davies' opinion, the ALJ's justifications are not sufficient. True, Dr. Davies was Plaintiff's marriage counselor but this does not mean she was ill-equipped to assess Plaintiff's mental health. The Commissioner cites to 20 C.F.R. § 404.1527(c)(2)(ii) for the proposition that "an ALJ must consider whether the source has provided treatment for the impairment in question." (Doc. 24, p. 17). However, this is not a situation where Plaintiff's ophthalmologist noticed that he complained of neck pain. *See* 20 C.F.R. § 404.1527(c)(2)(ii) (providing the ophthalmologist/neck pain example and explaining that such an opinion is entitled to less weight than that of a physician who treated the claimant's neck pain). Rather, this is a situation where Plaintiff's mental state was at issue, albeit it in the context of how it affected his marital relationship, and a licensed counselor made assessments that were both within her wheelhouse and pertinent to the counseling sessions. *See, e.g.*, 20 C.F.R. § 404.1527(c)(2)(ii), (c)(5).

The Commissioner also argues that the ALJ properly rejected Dr. Davies' opinion due to the doctor's limited treatment history with Plaintiff. (Doc. 24, p. 17). Plaintiff's treatment history with the doctor was not, however, one of the ALJ's proffered reasons for rejecting the evidence. And, the Court "may not create or adopt post-hoc rationalizations to support the ALJ's decision." *Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007).

Turning to the ALJ's evidentiary arguments, the Court has already addressed the isolated reference to Vistaril, and it is unable to decipher the ALJ's statement that "there is nothing in the record to suggest a decrease in [Plaintiff's] ability to perform mental activities." (AR 33). Unfortunately, the Commissioner does not address the latter in his response. The ALJ identified Plaintiff's depression and anxiety as severe impairments that limit Plaintiff's ability to perform basic work requirements. (AR 25). She also determined that Plaintiff's mental impairments caused moderate limitations in the four broad areas of functioning. (AR 26). These findings signify a "decrease" in Plaintiff's ability to perform mental activities. In the alternative, it is possible that the ALJ was referring to a decrease at a specific point in time or from a specific benchmark. Though, without further explanation from the ALJ, the Court cannot deem this a legitimate reason to discount the doctor's opinion. *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004).

### 3. Dr. Rajan K. Mirchandani

Via medical source statements from both 2012 and 2013, Plaintiff's treating physician, Dr. Mirchandani, expressed that Plaintiff was unable to work due to severe pain caused by arthritis and musculoskeletal issues; environmental sensitivities caused by Plaintiff's pemphigus vulgaris; medication side effects; depression; and anxiety. (AR 741-44, 778-81). He also assessed Plaintiff with multiple postural limitations. (*Id.*).

In rejecting Dr. Mirchandani's statements, the ALJ discussed the record medical evidence which revealed that Plaintiff had only minimal degenerative changes and arthritis in his hands and left elbow. (AR 32). There were no findings of arthritis otherwise, and Dr. Mirchandani's treatment notes did not contain any acute findings upon examination. (*Id.*).

The ALJ provided specific, legitimate reasons for discounting the doctor's statements in regard to Plaintiff's arthritic and musculoskeletal pain, viz., inconsistencies in the objective evidence of record. *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). Accordingly, the Court is without authority to displace the ALJ's findings. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). Although Plaintiff cites to evidence which he deems to be consistent with Dr. Mirchandani's opinions, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence" and does not warrant remand. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted).

However, the ALJ failed to discuss the doctor's statements concerning Plaintiff's environmental sensitivities and medication side effects. Both of these factors have the potential to alter Plaintiff's RFC and thus they must be considered and adressed in the ALJ's decision. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (explaining that an ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects"). This is especially important in the context of side effects as the record is replete with evidence that Plaintiff suffered from fatigue, dizziness, nausea, anxiety, depression, and other effects as a result of his pemphigus vulgaris treatments. *See, e.g.*, AR 848, 850, 868, 869, 871, 872.

## IV. CONCLUSION

The ALJ failed to properly support her rejection of the opinions provided by Dr. Krueger and Dr. Davies, and failed to consider and weigh Dr. Mirchandani's assessed environmental and medication based limitations. Because the Court "cannot simply presume that the ALJ applied the correct legal standards" in evaluating this evidence, *Watkins*, 350 F.3d at 1301, it must remand the Commissioner's decision for further proceedings. Consequently, these circumstances do not lend themselves to a court ordered award of benefits. *See, e.g.*, *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (awarding benefits to a disabled individual after determining that further proceedings on remand would not serve any useful purpose).

On remand, the Commissioner is directed to reevaluate the doctors' opinions in accordance with 20 C.F.R. § 404.1527(c)(1)-(6), and ensure that the weight assigned to all of the opinions is supported by substantial evidence. Due to this directive, the Court will not reach Plaintiff's remaining arguments. *See Watkins*, 350 F.3d at 1299 (explaining that the plaintiff's additional arguments "may be affected by the ALJ's treatment of [the] case on remand").

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for a Rehearing (Doc. 22) is hereby **GRANTED** as to Plaintiff's request for remand and reevaluation, and **DENIED** in regard to his request for payment of benefits. The Court further **ORDERS** that this matter is **REMANDED** for additional proceedings consistent with this order.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE